IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUTH V. SENSENIG,

       Plaintiff,

vs.                                    Civil No. 97-985 M/WWD

KENNETH S. APFEL,
Commissioner of Social Security,

       Defendant.[1]

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

    1.  THIS MATTER comes before the Court upon defendant's Motion to Dismiss, filed December 2, 1997 [6-1]. Defendant contends that this Court lacks jurisdiction to review the Social Security Administration's ("SSA") denial of Social Security benefits to Ms. Sensenig because her application was dismissed on grounds of *res judicata*. While plaintiff that concedes that this Court ordinarily lacks jurisdiction to review such decisions, she believes that her case is an exception to that rule because she presents a colorable constitutional claim. See Dozier v. Bowen, 891 F.2d 769, 771 (10th Cir. 1989); McGowen, 666 F.2d 60, 65 (4th Cir. 1981) (federal district court does not have jurisdiction unless plaintiff raises a constitutional objection to the application of res judicata); Tucker v. Sullivan, 779 F.Supp. 1290, 1295 (D.Kan. 1991)).

---

    [1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted for John J. Callahan, who was the Acting Commissioner of Social Security and the appropriate party at the time of the underlying decision. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2. Ms. Sensenig alleges impairments from back pain and diabetes mellitus. She was 52 years of age when she first applied for benefits and is now 69 years of age. Her insured status period ended December 31, 1990. Tr. at 35, 77, 78. In total, plaintiff submitted three applications for social security benefits, all of which were denied. The first application alleged an onset date of July 2, 1989 and was initially denied, as well as her request for reconsideration, on December 28, 1990. Plaintiff did not request a hearing before an Administrative Law Judge ("ALJ"), which she was required to do within 60 days from the denial. Her appeal request of November 6, 1991 was dismissed as untimely. Resp. at Ex. A.

3. Her second application was denied on March 11, 1992, alleging the same onset date of disability.[2] Tr. at 66. Ms. Sensenig then filed a third application for benefits, alleging a disability onset date of January 1, 1990. This was also denied initially and on reconsideration, on February 15, 1995. Plaintiff timely requested a hearing before the ALJ, which was held on July 6, 1995, Tr. at 19-21, for the sole purpose of allowing counsel to submit new evidence and to discuss the onset date of disability. Tr. at 4.

4. The ALJ denied the request for a hearing on the merits, finding instead that although the evidence was new, it was not material with respect to the 1992 prior final determination. Tr. at 21. The Appeals Council granted review, but ruled that the ALJ's dismissal of plaintiff's request for a hearing as final. Tr. at 5.

5. This Court's Order of December 5, 1997 ordered the parties to rebrief the issues and to include documentation referred to in the initial brief so that the Court could better determine

---

[2] The typographic error in the record which incorrectly referred to the date as March 11, 1995, was eventually corrected. Tr. at 6.

whether there is a basis for jurisdiction. Upon review of these materials, I find that plaintiff's due process rights were not violated on any of the aspects she has raised.

6. The parameters of a claimant's due process rights are not entirely clear. See Perry v. Sindermann, 408 U.S. 593, 599 (1972), overruled on other grds., Rust v. Sullivan, 500 U.S. 173 (1991); Weinberger v. Salfi, 422 U.S. 749, 771 (1975) (no constitutionally protected status to receive funds from public treasury).[3] Case law supports the existence of some degree of a property interest in social security benefits which triggers the protections of at least minimum due process requirements. Gonzalez v. Sullivan, 914 F.2d 1197, 1202 (9th Cir. 1990) (misleading notice form violates claimant's fifth amendment right to procedural due process); Dealy v. Heckler, 616 F.Supp. 880, 884 (W.D.Mo. 1984); Lavine v. Milne, 424 U.S. 577 (1976), cited in Adams v. Harris, 643 F.2d 995, 1001-02 (4th Cir. 1981) (assuming without deciding that Social Security applicant has constitutionally protected property interest); Gipson v. Harris, 633 F.2d 120, 122 (8th Cir. 1980) (also assuming protected property interest and holding that due process clause did not require the SSA to separately notify claimant's attorney of reconsideration denial); Califano, 430 U.S. at 108 (holding that [42 U.S.C. 405(g)] authorizes judicial review for colorable constitutional claims without holding that a property interest exists for due process purposes).

---

[3] The existence of a property right would be clear in the situation where the claimant had already been receiving benefits which are being terminated. Cmp. LaBaron v. United States, 989 F.2d 425, 428 (10th Cir. 1993); Barfield v. Weinberger, 485 F.2d 696-97 (5th Cir. 1973). In Mathews v. Eldridge, 424 U.S. 319 (1976), the Supreme Court held that recipients of Social Security benefits have a property interest in their *continued* receipt; accord, Atkins v. Parker, 472 U.S. 115, 128 n.31 (1985). The Mathews court did not rule on the question of whether *applicants* for benefits were entitled to the same interest. Walters v. National Ass'n of Radiation Survivors et al., 473 U.S. 305, 320 n.8 (1985).

**Alleged Constitutional Violations**

*Pro Se Status*

7. The fact that Ms. Sensenig was *pro se*, at least for her first two applications,[4] does not in itself violate her due process rights. Plaintiff does not raise any manifest error on the face of the record as a result of not being represented by counsel while she was in the initial stages of applying for benefits. See Absher v. Sec'y of Health, Educ. & Welfare, 371 F.Supp. 873 (M.D.N.C. 1974); Criddle v. Richardson, 334 F.Supp. 344 (S.D.W.Va. 1971), affirmed, 452 F.2d 1015.

8. More importantly, plaintiff's ability to understand and comply with notices and instructions sent by the Commissioner were not hampered by any impairment which made representation by counsel even more critical. Cmp., Tucker, 779 F.Supp. at 1295 (record contained medical documentation of plaintiff's mental impairment which prevented him from complying with administrative procedures).

*Failure to Treat Plaintiff's Inquiry as Request to Reopen*

9. Plaintiff alleges that the Commissioner's failure to treat her November 6, 1991 inquiry into her denial of benefits as a request to reopen her case is a "critical omission," without explaining why. Social Security regulations allow a determination to be reopened during the first 12 months "for any reason." 20 C.F.R. § 404.988(a).[5] This court would be without jurisdiction to review an actual denial of a request to reopen because decisions to reopen are discretionary.

---

[4] The record indicates that plaintiff had counsel when she appealed the denial of her request to reconsider her third application for benefits.

[5] A showing of "good cause" is required within the first four years of the date of the notice of the initial determination. 20 C.F.R. § 404.988(b).

Brown v. Sullivan, 912 F.2d 1194, 1196 (10th Cir. 1990). Thus, the Commissioner's failure to broadly interpret plaintiff's untimely appeal as a request to reopen seems even further removed from anything that can be construed as a due process requirement.

*Failure to Give Notice to Counsel that Claim Would be Be Decided on Res Judicata Grounds*

10. Plaintiff contends that the notice given to counsel about the July 6, 1995 hearing was deficient in that it failed to clearly state that *res judicata* would be addressed. Plaintiff relies on HALLEX I-2-440(H), which requires the Commissioner to include in the Notice of Hearing:

> a statement that if the additional testimony does not warrant revision of the prior determination or decision, the current request for hearing will be dismissed on the basis of res judicata.

The notice does not include such language. Tr. at 22. However, this deficiency does not rise to a due process violation, for several reasons.

11. First, the fact that *counsel* was not warned about the *res judicata* on the ALJ's agenda seems somewhat disingenuous. Counsel planned to bring "new" evidence into the hearing and knew that plaintiff had already been denied benefits three times. Counsel, who is experienced in this type of case, must have known there was no guarantee that the ALJ would find the evidence either new or material. That the ALJ would consider *res judicata*, given the posture of the case, should not have been surprising.

12. Second, the Appeals Council *did* give counsel a chance to respond to the *res judicata* issues. Tr. at 4. The fact that the Council never received his response does not prejudice the plaintiff.[6] The "response" is a five-line letter which requests remand of the *res judicata* issue to

---

[6] The Appeals Council did receive counsel's response, according to the registered return receipt. Resp., Exs. D, E.

5

the ALJ. This response, had the Appeals Council considered it, would not have provided much to examine in the way of plaintiff's position or legal arguments on the issue.

13.  Third, Ms. Sensenig herself did receive adequate notice of the possibility of *res judicata* (although phrased in layman's terms) as early as the March 12, 1992 letter, initially denying benefits on her third application, which cautions claimants of the consequences of filing new applications instead of appealing the denial. Tr. at 80.

14.  Last, even if the notice of the hearing was indeed technically deficient, plaintiff has no standing to assert a due process violation because she has not shown any causal connection between her injury and the deficiency. Gilbert v. Shalala, 45 F.3d 1391 (10th Cir. 1995); Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985).

*No Hearing in Prior Case*

15.  Plaintiff contends that administrative *res judicata* cannot apply without a hearing on the prior claim. The applicable regulation is 20 C.F.R. § 404.957(c)(1), which states:

> The doctrine of *res judicata* applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by *either administrative* or judicial action;" (emphasis added).

One district court case (cited by plaintiff) hints at the inconsistency of this regulation with 42 U.S.C. 405(h), which states that the "finding and decision of the Secretary after a *hearing*" shall be binding upon all individuals who are parties to such hearings." Dealy v. Heckler, 616 F.Supp. 880 (W.D.Mo. 1984).

16.  Nevertheless, case law leans toward allowing administrative *res judicata* to apply even without a prior hearing. See Thompson v. Schweiker, 665 F.2d 936 (9th Cir. 1982)

(holding that *res judicata* did not apply because record was "patently inadequate" and plaintiff was *pro se*); Absher v. Sec'y of HEW, 371 F.Supp. 873 (M.D.N.C. 1974)(relying on Social Security regulation); Leviner v. Richardson, 443 F.2d 1338, 1339 (4th Cir. 1971) (posing the question in terms of whether a hearing was *requested* rather than *held*; Domozid v. Cohen, 413 F.2d 5 (3rd Cir. 1969) (per curiam); Lewis v. Sec'y, HEW, 503 F.Supp. 1177 (S.D.N.Y. 1980); see also Aversa v. Sec'y of HHS, 672 F.Supp. 775 (D.N.J. 1987) (holding that *res judicata* applies only when a hearing has been held except when claimant fails to pursue administrative appeals).

17.  In sum, plaintiff's constitutional claims fail.  Thus, this Court has no jurisdiction remaining over plaintiff's claims except to determine whether *res judicata* was properly applied.

*Whether Res Judicata was Properly Applied*

18.  If Ms. Sensenig's last claim is the "same claim" as the claim earlier denied on March 11, 1992, and if the claim was not reopened or examined on the merits, then *res judicata* was properly applied and judicial review is precluded.  McGowen, 666 F.2d at 65; Tucker, 779 F.Supp. at 1295.

19.  In this case, the record was sufficient for the ALJ to determine the scope of the successive claims.  McGowen at 66.  At the July 6, 1995 hearing, the ALJ reviewed previous reports which served as the basis for the 1992 denial of benefits.  He also examined the "new" medical evidence specifically to determine whether it supported the existence of a new claim.  He noted that one of the two pieces of "new evidence" was Dr. Davis' report, which was already available at the time of the second application resulting in the March 11, 1992 denial of benefits. Tr. at 20.

20. The only "new evidence" turned out to be a five-line letter from Dr. Johnny Faith stating that plaintiff "suffers from insulin dependant Diabetes Mellitus, hypertension, hypothyroidism and degenerative joint disease." Tr. at 155. Dr. Faith also opined that he "[found] it very difficult for her to work." Id. The ALJ correctly gave this letter minimal weight, characterizing it as a medical opinion without medical findings. Puckett v. Chater, 100 F.3d 730, 733 n.2 (10th Cir. 1996) (diagnosis without medical findings not enough); 20 C.F.R. § 404.1525(d); see also. 20 C.F.R. § 404.1527(e)(1) (Commissioner is responsible for examining medical source opinions and making the determination on whether claimant meets statutory definition of disability).

21. The ALJ also noted that the letter, which attempted to make a retrospective diagnosis of Ms. Sensenig's actual disability prior to the expiration of the insured period (December 31, 1990) was without evidence. See Potter v. Sec'y of Health & Hum Serv., 905 F.2d 1346, 1349 (10th Cir. 1990) (retrospective diagnosis without evidence of actual disability prior to the expiration of claimant's insured status is insufficient).

22. The ALJ finally determined that although this evidence was "new," it was not material to the March 1992 final determination or sufficient to warrant reopening the case.[7] I find that the evidence in the record was sufficient to support this finding. Cmp. Thompson, 665 F.2d at 941 (application of *res judicata* is tantamount to a denial of due process where record is patently inadequate to support the ALJ's findings).

---

[7] Evidence which is sufficiently "new" may render *res judicata* inapplicable if it reveals the existence of a new claim. McGowen, 666 F.2d at 67. Or, it may be both "new" and "material," but nevertheless be revealed as going only to establish the same claim earlier denied. Id. Because the decision to reopen is entirely discretionary, however, evidence which is probative of the same claim may still be considered sufficiently "new and material" to justify reopening. Id.

23. In his decision denying plaintiff a hearing, the ALJ expressly declined to reopen plaintiff's case. Tr. at 21; cmp., Krumpelman 767 F.2d at 589 (9th Cir. 1985) (distinguishing the case from other cases where ALJ did not make explicit finding that the evidence was insufficient to warrant reopening). Although a claim may be reopened by legal implication by reconsidering the claim on its merits, this did not occur here. See e.g., Barton v. Sec'y of HHS, 683 F.Supp.1024, 1028; McGowen, 666 F.2d at 67 (inquiry into record to determine existence of different claim was not a reconsideration on the merits).

24. An examination of "new" evidence does not reopen a case. McGowen, 666 F.2d at 66. The ALJ's inquiry into the record was made to examine the factual and legal support in determining whether plaintiff's third application was the same claim and whether the claim should be reopened. Neither was the extent or character of the July 6, 1995 hearing sufficient to constitute an informal reopening, thus exposing the Commissioner's final decision to judicial review. See McGowen, 666 F.2d at 67; cmp., Taylor for Peck v. Heckler, 738 F.2d 1112 (10th Cir. 1984) (holding that the ALJ had reopened the case, based on the ALJ's full scale hearing and lack of specific rulings on *res judicata* and reopening).

25. In sum, plaintiff's several due process arguments are without merit and thus her allegations of a constitutional claim do not affect the application of *res judicata* to her third application for benefits. In addition, I find that *res judicata* was properly applied to her claim, so that this Court lacks jurisdiction to review plaintiff's claims.

9

## Recommendation

I recommend that defendant's Motion to Dismiss [6-1] should be **granted**, and that this cause of action dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE

.